UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ABCON ASSOCIATES, INC.,

        Plaintiff,

  -against-

HAAS & NAJARIAN and
HAAS & NAJARIAN, LLP,

        Defendants.
----------------------------------------------------------X

MEMORANDUM AND ORDER

12-CV-0928

(Wexler, J.)

APPEARANCES:

HAMBURGER, MAXSON, YAFFE & McNALLY, LLP
By: Richard Hamburger, Esq.
    Andrew K. Martingale, Esq.
225 Broad Hollow Road, Suite 301E
Melville, NY 11747
Attorneys for Plaintiff

WACHTEL MISSRY LLP
By: Jeffrey T. Strauss, Esq.
    Sara Spiegelman, Esq.
One Dag Hammarskjold Plaza
885 Second Avenue
New York, NY 10017
Attorneys for Defendants

WEXLER, District Judge:

        Plaintiff Abcon Associates, Inc. ("Abcon" or "Plaintiff") brings this action to recover legal fees it paid its attorneys, the Defendants Haas & Najarian and Haas & Najarian LLP ("H&N" or "Defendants") for its representation of Abcon in an action against the United States Postal Service ("USPS"). Abcon claims that H&N breached the legal services agreement and its

-1-

amendments agreed to by the parties and seeks return of legal fees paid in connection with those agreements. Defendants bring counterclaims of quantum meruit to recover fees for services provided. Following a bench trial before this Court, and having considered the parties' post-trial submissions, the Court makes the following findings of fact and conclusions of law on Plaintiff's and Defendants' claims.

## FINDINGS OF FACT

I. The Parties

    1. Plaintiff Abcon is a project management firm, and Michael Zenobia ("Zenobia") is Abcon's President.

    2. Defendant H&N is a law firm retained by Abcon on April 14, 1998 in connection with a dispute it had with the USPS. Louis Haas ("Haas") is one of the founding partners of H&N. Pursuant to the terms of the original retainer agreement ("1998 Retainer Agreement"), Abcon was to pay H&N on an hourly basis for services provided. See Plaintiff's and Defendants' Joint Exhibits ("JX"), 7.

II. The USPS Default Termination

    3. Prior to being represented by H&N, in May 1996, Abcon was awarded a contract by the USPS to perform work at the USPS Distribution Center in Queens, New York. On or about December 31, 1997, USPS terminated Abcon's contract for default because it was dissatisfied with Abcon's performance.

    4. After initially hiring another law firm to represent it, in April 1998, Abcon

retained H&N in connection with the USPS termination. JX 7.

5. As part of that representation, H&N brought an action on Abcon's behalf in the U.S. Court of Federal Claims. By order dated June 29, 2001, the U.S. Court of Federal Claims determined that the USPS had terminated Abcon for convenience rather than cause, and that Abcon was entitled to recover damages. More legal work was required to obtain those damages. In addition, USPS appealed that order.

6. In connection with the defaulted contract with USPS, Abcon's surety, United States Fidelity & Guaranty Company ("USF&G"), obtained a judgment against Abcon, and Zenobia and his wife Theresa ("Theresa") in the amount of $1.7 million on January 24, 2001. Trial transcript ("Tr."), 27:11 - 28:5; 33:25 - 34:17.

7. To pay off that judgment, Zenobia, Theresa and South Setauket Associates ("SSA"), an entity controlled by Zenobia, took out a loan with Roslyn Savings Bank ("Roslyn") in the amount of $2 million on March 12, 2002. The loan was secured by a mortgage on the personal home of Zenobia and Theresa, as well as a mortgage on a commercial piece of property owned by SSA, and an assignment by USF&G of its entitlement to any sums pursuant to the judgment it obtained in connection with the USPS matter. JX 49, at 1.

III. The Legal Services Agreement and Its Amendments

Legal Services Agreement - 2002

8. Around that time, Haas was concerned about how H&N would get paid for the remaining work to be done on the action against USPS. On December 18 and 19, 2002, H&N and Abcon executed a legal services agreement ("LSA"). JX 42. In the LSA, the parties acknowledged that H&N was owed fees in the amount of $183,489.64 for services provided through December 31, 2001, and further acknowledged that additional fees would continue to be incurred.

9. By the LSA, Abcon granted H&N a lien upon any amount of money it recovered from the USPS, (other than fees recovered on the Equal Access to Justice Act ("EAJA"), which permits payment of the prevailing parties' attorneys' fees), and stated that "the parties agree that H&N's lien shall be subordinate to the lien securing the loan by Abcon and its principals to Roslyn Savings Bank in the approximate amount of $2,000,000." JX 42, at 2.

10. The USPS appeal was decided in Abcon's favor before the Letter Agreement was signed.

11. In May 2005, the USPS contracting officer issued a final decision granting Abcon termination for convenience costs in the amount of $2,405,150.32 ("May 2005 Order"). Rather than pay this money to Abcon and its creditors, USPS initiated an interpleader action in this Court on June 28, 2005. Tr. 160:24 - 161:5; USA v. Abcon Associates, Inc., et al., 05-CV-3178 (LDW). Accordingly, that money was deposited with the Court

("Interpleader Fund" or "Fund"). See JX 55, at 3-4.

First Amendment - 2005

12. After the interpleader action was started, the parties executed an amendment to the LSA effective August 15, 2005 ("First Amendment"). The First Amendment states that Abcon requested H&N represent it on an appeal of the May 2005 Order, that Abcon acknowledged that H&N was owed $260,000 in fees and that the Interpleader Funds were subject to a charging lien in favor of H&N, and provided that H&N could recover additional fees on a contingency basis if additional money was recovered by the appeal. JX 29, at 2.

13. The First Amendment also states that H&N agreed that any sums due it pursuant to the First Amendment "shall be subject to and subordinate to any sums due to Roslyn Savings Bank" as stated in the LSA. The First Amendment acknowledges and affirms the other provisions of the LSA. JX 29, at 2.

14. H&N filed the appeal contemplated by the First Amendment. While that appeal was pending, on December 18, 2006, this Court in the interpleader action issued an order granting New York Community Bank ("NYCB"), as successor to Roslyn, a priority lien against the Interpleader Fund. JX 55.

Modification of the First Amendment - 2007

15. Thereafter, on July 20, 2007, the parties executed a letter agreement ("Letter Agreement") from Haas to Zenobia dated June 27, 2007, outlining

-5-

a distribution plan for the Interpleader Funds and modifies the First Amendment to the LSA. It outlines how Abcon's creditors were to be paid out of the Fund, and states that H&N would receive $263,000, and that NYCB would receive the balance of the Interpleader Funds. It also provides that H&N would receive a percentage of any additional money recovered in the USPS proceedings. JX 21.

16. The Letter Agreement states that "the above distribution agreement is contingent upon your satisfaction with the resolution you are able to achieve with NYCB concerning the balance of Abcon's debt to NYCB as guaranteed and collateralized by you." It is written on H&N letterhead and signed by Haas, and "[a]greed to and accepted by" Zenobia as President of Abcon. JX 21, at 2.

IV. Distribution of the Interpleader Funds

17. Following execution of the Letter Agreement, a stipulation concerning the agreed distribution of the interpleader funds was "so ordered" by this Court on August 12, 2007. Pursuant to that stipulation and as agreed in the Letter Agreement, H&N was paid $263,000.00 ("First Distribution Order"). JX 13, at 2.

18. Following a determination on the administrative appeal, the USPS deposited additional money into the Interpleader Fund, which was distributed amongst the various creditors by order of this Court dated December 15, 2008 ("Second Distribution Order"). $200,000 was paid to

H&N and the balance of $655,416.60 was paid to NYCB. JX 14, at 4. This represented a payment to H&N in the amount of 40% of the first $500,000 received by Abcon, as provided for in the Letter Agreement.

Second Circuit Decision

19. On May 9, 2009, the Second Circuit reversed this Court's decision of December 18, 2006, which held that NYCB had a priority lien, invalidating that priority. Plaintiff's Exhibit ("PX") 15.

20. Thereafter, on June 30, 2009, this Court held a conference with Abcon and all the creditors entitled to payment from the Interpleader Funds. A settlement was reached ("2009 Settlement"). Pursuant to the 2009 Settlement, NYCB returned $904,129 of the money it received pursuant to the First and Second Distribution Orders, which was then distributed amongst the other creditors. JX 10, 11, 12 and 1. As a result, the outstanding debt owed to NYCB increased from $257,361.12 to $1,161,490.12. JX 1, at 4.

21. At the conference, Abcon's lawyers objected to the terms of the 2009 Settlement agreed by the creditors, stating that because of the Roslyn subordination, "[w]e don't believe Hass (sic) should be getting paid all the money they are getting paid." JX 10, at 7. This Court overruled that objection. Abcon's lawyers did not appeal that ruling. This action was filed on February 27, 2012. JX 51.

V. The Mortgage Held by NYCB

22. As noted above, in 2002, Michael and Theresa Zenobia and SSA took out a loan from Rosyln (NYCB). That loan was secured by mortgages on the Zenobias' personal property and commercial property owned by SSA, and the assignment of USF&G's interest. In 2004, NYCB initiated an action in New York state court to foreclose on the mortgages securing the loan. In December 2007, the court there granted NYCB summary judgment. A referee report determined that by May 11, 2012, with interest, the debt owed to NYCB was $1,493,839.44. JX 1, at 4.

23. Following extensive negotiations in an effort to prevent foreclosure, in July 2013, a group of Zenobia's relatives formed and funded Duboc Realty Corp., which purchased the note and mortgage from NYCB for $850,000.00. There were no further foreclosure proceedings.

VI. Quantum Meruit

24. H&N brings a claim for quantum meruit to recover payment for the services it provided, if Abcon prevails on its breach of contract claim. H&N claims that it is entitled to fees in the amount of $238,691 based on 2054 hours of work it performed for Abcon before the appeals, including a set-off for the fees it has already been paid. H&N also seeks fees for work it did on and after the appeal in the amount of $329,794, based on 782 hours of work and disbursements. The total amount H&N seeks is $568,485. Tr.190, l.16-193, l.4; Defendants' Exhibit ("DX") M.

25. Plaintiff asserts that H&N has already been paid $426,009 for legal services provided to Abcon, not including the $463,000 that is disputed, which, it argues, is sufficient payment for the services provided.

## CONCLUSIONS OF LAW

I. <u>Plaintiff's Breach of Contract Claim</u>

26. In connection with the earlier motion to dismiss in this case, this Court already ruled that the three agreements -- the LSA, the First Amendment, and the Letter Agreement -- constitute one agreement since they "were intended by the parties to be unified to each other, each subsequent agreement reaffirming or acknowledging the prior document." <u>See</u> Memorandum and Order, dated July 16, 2013, at 11 (citing <u>131 Heartland Blvd. Copr. V. C.J. Jon Corp.</u>, 82 A.D.3d 1188, 1190, 921 N.Y.S.2d 94, 97-98 (2d Dept. 2011)). Plaintiff's claim is therefore for one breach of contract claim, not three. <u>Id.</u>

27. To establish a breach of contract claim, a plaintiff must prove: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach. <u>National Market Share, Inc. v. Sterling Nat. Bank</u>, 392 F.3d 520, 525 (2d Cir. 2004).

28. It is well settled that a "written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." <u>G3-Purves Street, LLC v. Thomson Purves, LLC</u>, 101 A.D.3d 37, 40, 953 N.Y.S.2d 109 (2d Dept. 2012) (quoting <u>Greenfield v</u>

Phillies Records, 98 NY2d 562, 569 (2002); see Etzion v Etzion, 84 AD3d 1015, 1016 (2011)).

29. It is fundamental that "agreements are construed in accordance with the parties' intent." Greenfield v. Phillies Records, 98 N.Y.2d 562, 569, 750 N.Y.S.2d 565, 569, 780 N.E.2d 166, 170 (2002) (citations omitted). "The best evidence of what parties to a written agreement intend is what they say in their writing. Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms. Extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous, which is an issue of law for the courts to decide." Id. (citations omitted).

30. Contracts should be interpreted to give effect to its provisions, and avoid interpretations that render a clause meaningless. Union Carbide Corp. v. Affiliated FM Ins. Co., 68 A.D.3d 534, 536, 891 N.Y.S.2d 347, 350 (1st Dept. 2009); U.S. Bank Nat. Ass'n v. Rich Albany Hotel, LLC, 983 N.Y.S.2d 207 (Table), 42 Misc.3d 1201(A) (Alb. Cty. 2013) .

Subordination and Satisfaction Clauses

31. The LSA and the First Amendment clearly state that H&N's lien "shall be subordinate to" the lien, or any sums due under the loan to Roslyn Savings Bank. This clear language, and its inclusion in the LSA and the First Amendment, indicates that the parties intended -- not just once, but twice -- to be bound by this "subordination" clause.

32. Similarly, the Court finds that the parties intended to be bound by the "satisfaction" clause of the Letter Agreement.

33. The Letter Agreement states that the distribution is subject to "<u>your</u> satisfaction with the resolution <u>you</u> are able to achieve with NYCB concerning the balance of Abcon's debt to NYCB as guaranteed and collateralized by <u>you</u>." (Emphasis added). It is addressed to Michael Zenobia, and is "Agreed to and Accepted:" and signed by Zenobia as President of Abcon. See JX 21, at 2.

34. Even though Abcon was not a borrower on the loan with Roslyn, there is no ambiguity amongst the parties that the Roslyn/NYCB loan was the "debt to NYCB as guaranteed and collateralized by you." Further, the evidence indicates that Haas understood that Zenobia had the right of satisfaction. See e.g., JX 20 (email from Haas to Zenobia referring to the duty on Zenobia to "indicate your satisfaction or dissatisfaction with whatever arrangements you make with NYCB...in a timely manner...").

35. Similarly, there is no ambiguity that the Roslyn/NYCB loan was the loan at issue in connection with the subordination clause found in paragraph 5 of the LSA, or the loan at issue in the subordination clause of the First Amendment. At trial, Mr. Haas testified that he understood the subordination clauses to refer to the Roslyn/NYCB loan, and that his firm was subject to the "contractual subordination" to that loan. Tr., at 178, l. 21 - 179, l. 2.

### Timeliness of Satisfaction Clause

36. When a contract does not specify time for performance, the law implies that time of performance be reasonable, based on the facts and circumstances of the particular case. Savasta v. 470 Newport Associates, 82 N.Y.2d 763 765, 623 N.E.2d 1171, 603 N.Y.S.2d 821 (1993).

37. Here, the parties executed the Letter Agreement in July 2007 after this Court ruled that NYCB had a priority lien over Abcon's other creditors. The Interpleader Funds were distributed accordingly, including the $463,000 paid to H&N. Abcon did not express any "dissatisfaction" and the Letter Agreement was thus performed.

38. Following the Second Circuit decision in May 2009 when the priorities were re-ordered, Abcon was no longer "satisfied" and expressed that dissatisfaction in a timely manner. Since Abcon's satisfaction was a clear term of the contract, Abcon's dissatisfaction, expressed at the 2009 Settlement in a timely manner based on the changed circumstances, precludes the fees payment of $463,000 to H&N pursuant to the Letter Agreement. H&N's failure to return the $463,000 upon the timely expressed dissatisfaction of Abcon is a breach of the agreement. The Court finds that Plaintiff sufficiently states a claim for breach of contract against Defendants H&N, in the amount of $463,000.

II. <u>Quantum Meruit</u>

39. A claim to recover under a quasi contract theory is "based on the equitable principles that a person shall not be allowed to enrich himself unjustly at the expense of another." <u>Waldman v. Englishtown Sportswear</u>, Ltd., 92 A.D.2d 833, 836, 460 N.Y.S.2d 552, 556 (1st Dept. 1983) (citing 50 N.Y.Jur., Restitution and Implied Contracts § 3) (permitting a claim for quantum meruit for compensation beyond the period of time covered by an express agreement).

40. Quantum meruit "is based on the general equitable notion that '[w]hether denominated 'acting in reliance' or 'restitution,' all concur that a promisee who partially performs ... at a promisor's request should be allowed to recover the fair and reasonable value of the performance rendered, regardless of the enforceability of the original agreement.'" <u>Eli Attia Architects v. Safra</u>, No. 94-CV-2928 (KMW), 1996 WL 480721, at *7 (S.D.N.Y. Aug. 23, 1996) (quoting <u>Farash v. Sykes Datatronics, Inc.</u>, 452 N.E.2d 1245, 1248 (N.Y. 1983) and <u>Grappo v. Alitalia Linee Aeree Italiane</u>, 56 F.3d 427, 433 (2d Cir. 1995)).

41. To state a claim for quantum meruit under New York law, a claimant must establish "'(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." <u>Longo v. Shore & Reich, Ltd.</u>, 25 F.3d 94, 98 (2d Cir. 1994)

-13-

(citations omitted).

42. If the parties' relationship is governed by a legal enforceable contract, a claim for quantum meruit is precluded. Aviv Constr. Inc. v. Antiquarium, 259 A.D.2d 445, 446, 687 N.Y.S.2d 344, 345 (1st Dept. 1999).

43. Yet, under New York law, "'[t]he doctrine of quantum meruit allows a plaintiff to recover even where an express contract has been rescinded, is unenforceable or has been abrogated because it enforces the enriched party's implied promise to pay for benefits conferred by the plaintiff." Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 604 (S.D.N.Y. 2005) (permitting amendment of a complaint to include a claim for quantum meruit where the agreement between the parties is invalid) (citing Eli Attia Architects, 1996 WL 480721, at *7 and Waldman, 92 A.D.2d at 836, 460 N.Y.S.2d at 556).

44. The Court finds that Defendants' rights to certain fees under the Letter Agreement were abrogated by the Second Circuit decision which re-ordered the priorities of Abcon's creditors. While H&N's entitlement to its fees due under the Letter Agreement was upended by that re-ordering, it is clear that there was always an expectation of payment for the services provided to Abcon. In each agreement and amendment, Abcon acknowledged that H&N was owed fees, and indeed, continued to use H&N's services in its effort to collect more money from the USPS, and acknowledged fees would be owed for future services provided. Each

agreement or amendment provided a mechanism for H&N to recover additional fees on a contingency basis if more money was recovered.

45. The Court finds that while there was an agreement between the parties, H&N's entitlement to the fees provided for in the agreement was abrogated when Abcon exercised its entitlement to "satisfaction with the resolution" achieved with respect to the Roslyn/NYCB debt. Notably, the Letter Agreement does not indicate the amount of fees due H&N in the event there is dissatisfaction, but clearly reflects an intention to pay fees to H&N.

46. The Court finds that H&N provided its services in good faith, Abcon accepted those services, and both parties expected H&N would be compensated in some way for the services provided. Furthermore, the value H&N seeks for those services is reasonable.

47. Defendants H&N have sufficiently stated a claim for quantum meruit in the amount of $568,845.

## CONCLUSION

The Court finds that Plaintiff has established that Defendants breached the parties' agreement by failing to return its share of the distribution once Abcon was no longer satisfied with the resolution that was achieved with NYCB. Therefore, the Court awards Plaintiff $463,000 on its claim for breach of contract.

Further, the Court finds that Defendants have sufficiently stated a claim for quantum meruit, and awards Defendants $568,845 in fees for the services provided to Plaintiff Abcon.

Counsel for Plaintiff and Defendants are directed to submit a proposed order of judgment.

SO ORDERED.

s/ Leonard D. Wexler
_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
February 29, 2016